**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | | |
|---|---|---|
| **MARY SPALDING** | ) | |
| | ) | |
| **PLAINTIFF** | ) | |
| **v.** | ) | CASE NO. __3:25-CV-164-RGJ_____ |
| | ) | |
| **LOUISVILLE METRO GOVERNMENT** | ) | *(Electronically Filed)* |
| **JUSTIN HAYDOCK** | ) | |
| **CHRISTOPHER WATKINS** | ) | **(STATEWIDE RELIEF)** |
| **ROSE FOUNTAIN** | ) | |
| **JIM SPARKS** | ) | |
| **BENJAMIN SHELTON** | ) | |
| | ) | |
| **DEFENDANTS.** | ) | |

## VERIFIED COMPLAINT AND DEMAND FOR A JURY TRIAL

The Plaintiff, Mary Spalding, by counsel, for her Complaint herein against the Defendants, states as follows:

1.      The Plaintiff, Mary Spalding, is a 73-year-old Black female who was at all times herein a resident of Louisville, Kentucky.

2.      Defendant, Louisville Metro Government, is a government agency incorporated under the laws of the Commonwealth of Kentucky.

3.      Defendants, Justin Haydock, Christopher Watkins, Rose Fountain, Jim Sparks, and Benjamin Shelton, are or were officers and/or technicians of the Louisville Metro Government Department.

4.      This Court has subject matter jurisdiction under 42 U.S.C. § 1983 and §1985.

5.      Venue is appropriate because the Defendant, Louisville Metro Government, is a government agency within the district boundaries for this Court, and because all of the remaining

defendants are employed by the Louisville Metro Government and there exists a high probability that all remaining defendants live in or near this Court's district.

6.      On or about the morning of December 17, 2018, the Plaintiff, Mary Spalding, was brutally assaulted in her home. The assault included lacerations and contusions to her head and face, multiple fractures to both her right and left hands, and multiple blows to her chest, legs and arms, all consistent with being repeatedly struck by a rounded linear object.

7.      The same day, Mary reported the assault to the Louisville Metro police department following extensive medical treatment.

8.      Mary's case was officially assigned to the late Detective Diedre Mengedoht on December 20, 2018.

9.      Detective Mengedoht worked directly with Mary and made multiple attempts to contact the lead suspect, Hildred Clark, Mary's ex-fiancé. These included an attempted "knock & talk" on December 17, an attempted phone call and message on December 18, and surveillance of his home on December 19, 20, and 21.

10.     Detective Mengedoht tragically died on December 24, 2018.

11.     Mary's case was then reassigned to Detective Justin Haydock on January 7, 2019.

12.     The following facts were found and memorialized by the Office of Inspector General, Louisville Kentucky, in its report dated April 17, 2024 (hereinafter "OIG Report") which is attached as Exhibit 1 to this Complaint, and states, "*It is important to understand these discrepancies are not the exclusive failure of one individual, but rather a failure of the system. Ms. Spaulding's case is a grave example of an institutional failure within LMPD*."

13.    Throughout his time assigned to Mary's case, Haydock repeatedly dismissed leads, mishandled evidence, lost crucial evidence, and ignored and denied Mary's request for information and records pertaining to her assault.

14.    DNA evidence of bloody shoe prints was collected from Mary's house. The presumptive blood testing conducted on a possible bloody footprint located near the rear entry of Mary's residence was invalidated due to improper testing procedure during the rehydrating sample phase by Crime Scene Unit Detective Jim Sparks. Sparks was to wait a required ten minutes before reading the DNA sample results, but instead waited a mere 31 seconds and concluded there was no DNA.

15.    Additionally, a Gatorade bottle possibly containing DNA evidence, handprints, photographs of Mary's injuries, and video surveillance of the assailant following the attack were all mishandled, lost or damaged throughout the supposed investigation conducted by Haydock and the Louisville Metro police department's Division 2.

16.    In response to Haydock's repeated failures and demonstrated lack of concern for Mary's case, Mary complained to Haydock's Sergeant, Christopher Watkins in November 2019 and asked that Watkins assign a new detective to handle her case.

17.    Watkins denied Mary's request for a new lead detective and continued to assign Haydock to the case.

18.    When the LMPD's Public Standards Unit asked Watkins about this decision, he gave a strange defense that the file that Detective Mengedoht had for Mary's case had been destroyed in a fire. This was demonstrably false. Indeed, three years later Mary's file was found in none other than Detective Mengedoht's office.

19.     Furthermore, Watkins stated that according to Louisville Metro department policy, he is to review open felony case files his detectives have every sixty (60) days. Watkins claimed that he had done this for Haydock's file on Mary's case and found Haydock's work "completely thorough." The OIG openly doubted this by asking, "***How can Sgt. Watkins conclude a complete and thorough investigation was completed by Det. Haydock, when the case file is missing necessary components***?" Please see Page 6 of the OIG Report.

20.     In January 2021, Haydock left the LMPD and Rose Fountain was assigned as the new lead detective.

21.     Between January of 2021 and June of 2021 Fountain made little to no effort in further investigating Mary's case but indicated that discussions with a prosecutor were soon to be had to discuss the viability of Mary's case.

22.     In August 2021, Mary emailed victim services specialist Leigh Sheridan that she believed no one was pursuing her case because she is Black.

23.     Fountain did not make any contact with the county attorney's office regarding Mary's case until March 16, 2022, when she left an ambiguous voicemail for County Attorney, Jennifer Yancey, that did not include "***a report number or any information about what case she wanted to discuss.***"  Please see OIG Report, Page 13. Yancey returned Fountain's call with an email, which Fountain never returned.

24.     Mary contacted Sheridan who informed Mary that Fountain told Sheridan that Fountain had spoken with Mary about a "discussion and review" of her case with County Attorney Jennifer Yancey and indicated that "no charges can be filed due to lack of evidence" and closed Mary's case. This was completely false.

25.     Mary never had any such conversation with Fountain.

26.     Jennifer Yancey had never reviewed Mary's case file nor the evidence contained therein because Fountain never provided Yancey with any documentation to review.

27.     The OIG concluded, "***Det. Fountain's untruthfulness regarding the presentation of Ms. Spalding's case leads to the Commonwealth Attorney's office refusing to screen Ms. Spalding's case due to Det. Fountain's documenting she previously screened the case with Ms. Yancey***." Please see OIG Report, Page 14.

28.     Detective (or Sergeant) Benjamin Shelton became the lead on Mary's case by July 2023.

29.     In a meeting with Sergeant Benjamin Shelton in October 2023, Mary asked him why the Louisville Police department did not care about her case, and if it is because she is an elderly Black woman.

30.     At no point in the nearly six years that have passed since Mary was brutally assaulted has her case been respected by the LMPD.

31.     Detective Mengedoht found that the assailant was able to get in Mary's home without forced entry, meaning he must have had a key. This assailant remains at large precisely because of Defendants' collective actions and inactions, and Mary has been unable to rest since.

**COUNT I**
**Conspiracy to Interfere with Civil Rights**

32.     Mary brings this Count I pursuant to 42 U.S.C.§1985(3).

33.     Defendants, Haydock, Watkins, Fountain, and Sparks, conspired throughout and continuing through Mary's ongoing investigation for the purpose of depriving her of equal protection of the laws because of her race.

34.     As a direct and proximate result of the Defendants' wrongful actions and continuing wrongful actions, Plaintiff has suffered mental anguish, embarrassment and humiliation. Plaintiff

is entitled to recover for the same from the Defendants.

35.    Defendants' discriminatory treatment of Plaintiff continues to cause, and will cause her, to suffer mental anguish and substantial damages for pecuniary losses, as well as humiliation and damages to her personal dignity.

36.    That the conduct, actions and/or inactions of Defendants were so grossly reckless and/or so grossly negligent and/or wanton and/or intentional so as to entitle Mary to an award of punitive or exemplary damages in an amount far in excess of that amount required to establish the jurisdiction of this Court.

## COUNT II
### Municipal Liability Under 42 U.S.C.§1983

37.    Mary brings this Count II pursuant to 42 U.S.C.§1983.

38.    The Defendant, Louisville Metro Government, deprived Mary and continue to deprive Mary of equal protection of the law because of her race through a policy of inadequate training or supervision and/or a custom of tolerance or acquiescence of federal rights violations.

39.    As a direct and proximate result of the Defendants' continuing wrongful actions, Plaintiff has suffered mental anguish, embarrassment and humiliation. Plaintiff is entitled to recover for the same from the Defendants.

40.    Defendants' continuing discriminatory treatment of Plaintiff continues to cause, and will cause her, to suffer mental anguish and substantial damages for pecuniary losses, as well as humiliation and damages to her personal dignity.

41.    That the conduct, actions and/or inactions of Defendants were so grossly reckless and/or so grossly negligent and/or wanton and/or intentional so as to entitle Mary to an award of punitive or exemplary damages in an amount far in excess of that amount required to establish the jurisdiction of this Court.

**WHEREFORE,** the Plaintiff, Mary Spalding, respectfully demands judgment against the Defendants on her claims as follows:

1.    Actual and punitive damages against the Louisville Metro Government;

2.    Actual and punitive damages against Justin Haydock, Christopher Watkins, Rose Fountain, Jim Sparks, and Benjamin Shelton;

3.    Reimbursement for costs of this action and attorney fees expended herein under any and all other applicable statutes;

4.    A trial by jury; and,

5.    Any and all other further relief for which she may be entitled

MORGAN POTTINGER MCGARVEY

By: */s/ Thomas R. Coffey*
    Thomas R. Coffey (KBA #91951)
    401 South Fourth Street, Suite 1200
    Louisville, KY 40202
    (502) 560-6742
    trc@mpmfirm.com
    *Counsel for Plaintiff*